**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| M.M., and WASCAR DELEON | **Case No.** |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| SWEEPSTEAKES LIMITED. | |
| Defendant. | |

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................ 0

NATURE OF THE ACTION AND FACTUAL ALLEGATIONS ........................... 1

    A.    The Problem Of Online Gambling ...................................................... 1

    B.    Stake Operates A Gambling Website ................................................. 4

    C.    Stake Has Massively Scaled Up An Old Gimmick That
          Criminals Once Tried To Use To Evade Gambling Laws ................... 10

          1.    The Internet Café "Sweepstakes" Crime Trend Of
                 The Early 2000's ................................................................. 10

          2.    Stake.us Is An Online Version Of An Internet Café ............. 14

    D.    Stake's Admission That Its Website Offers "Sweepstakes"
          Further Establishes Illegality ............................................................ 17

    E.    Stake Misleads The Public With False Claims Of Legality
          And Deceptive Omissions And Partial Representations ...................... 19

PARTIES ........................................................................................................ 20

JURISDICTION AND VENUE ......................................................................... 21

CLASS ALLEGATIONS ................................................................................. 22

FIRST CAUSE OF ACTION: M.G.L. CH. 93A ................................................. 24

SECOND CAUSE OF ACTION: M.G.L. CH. 137 .............................................. 26

THIRD CAUSE OF ACTION: UNJUST ENRICHMENT ...................................... 27

PRAYER FOR RELIEF ................................................................................... 28

## NATURE OF THE ACTION AND FACTUAL ALLEGATIONS

1.     Plaintiffs bring this action under Massachusetts General Laws, Chapters 93A and 137, and for unjust enrichment in the alternative, seeking recovery of Defendant Sweepsteak Limited's ("Stake") unlawful gambling winnings and injunctive relief to shut down its illegal gambling website, Stake.us.  What began as a small, cryptocurrency-based online dice game has grown to a behemoth, offshore criminal enterprise that operates an unlicensed gambling operation, pays no taxes or licensing fees to local governments, and is fueling a rise in online gambling addiction.

2.     Due to recent state regulatory action, the number of U.S. states where Stake no longer operates has grown from four in 2022, to thirteen as of February 20, 2025.  *See* Exs. 2-3; *compare* ECF No. 34-3, at § 2(a) *with* Ex. 4, at § 2.1 (identifying excluded states).  And yet Stake.us continues to provide gambling in Massachusetts.

### A.     The Problem Of Online Gambling

3.     The online gambling industry is profiting from gambling addiction the same way the Sackler family once profited from opioids.  For decades, the proportion of Americans diagnosed with pathological gambling held steady at less than 1 percent, with 7 million Americans believed to be suffering from a gambling addiction at an annual "social cost" of $14 billion.  But those numbers have skyrocketed with the advent of online gambling: from 2021 to 2022, there was a 45 percent increase in the number of calls, texts, and messages to the National Problem Gambling Helpline.

4.     According to one study, up to 30 percent of problem gamblers have attempted suicide, while a larger percentage of such individuals reported having suicidal ideations.

5.     The fallout is not limited to gamblers.  It has a ripple effect that negatively impacts spouses, partners, children, and employers.  Online gambling addiction also has massive social consequences, resulting in the drain on state government funds to address addiction, the rise in teenage online gambling addiction, and the rise in crime associated with online gambling addiction.

6.     During the last five years, online gambling websites have proliferated with no way to reduce the ensuing harm.  This shift is already evident with the gamblers seeking treatment, who tend to be younger, predominantly male, and raised on smart phones.

7.     This rise also includes a relatively new phenomenon: gambling addiction among minors under the age of 18.  Whereas brick-and-mortar casinos could take steps to exclude minors, the easy access to online gambling has made it easier for underage minors to participate in gambling.  Websites like Stake.us are designed to attract adolescents as well as adults, and are causing a sharp rise in online gambling addiction among minors.

8.     Treating online gambling addiction poses challenges that are different from other forms of addiction.  For an individual with substance use disorder, safety measures like disposing of all alcohol or drug paraphernalia or avoiding triggering social events are key to treatment.  Things are not so clear-cut when treating digital gambling because for most people, mobile devices have become a necessity of life.  So, it's not a question of avoiding the drive to the casino, but instead, a constant struggle to avoid the temptation to gamble from home, work, restaurants, the grocery store, while on vacation, and anywhere else where the gambler's device can receive a signal.  Furthermore, unlike the billions of dollars of federal funding dedicated to alcohol, tobacco and drug addiction programs, there are no federal funds allocated to support problem gambling services.

9.      To make matters worse, although the casino gaming industry is one of the most regulated businesses in the United States, online gaming websites like Stake.us are unlicensed and unregulated.  A gaming license is a privilege that requires, among other things: (1) meeting state standards; (2) background checks on company officers and directors; (3) adherence to responsible gaming programs; (4) anti-money laundering measures; and (5) myriad other requirements concerning data privacy, security, and responding to customer complaints. Defendants dodge all these requirements.  As one gambling treatment provider warned, "[u]nregulated platforms [like Stake.us] can pose significant risks for players struggling with gambling addiction.  The lack of proper safeguards often exacerbates financial and emotional stress, making it harder for individuals to regain control."

10.     For example, Stake accepts credit cards to pay for gambling, in violation of the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. §§ 5361-5367.  This has caused numerous people to rack up massive debt gambling on Stake.us.

11.     Stake also deprive Massachusetts state and local governments of tax revenues that legitimate, regulated casinos pay.

12.     The bottom line is that Stake lets people play online casino games and wager real money while skirting regulation and licensing, offering inadequate player protections, exploiting adolescents, and siphoning revenue from state governments.

13.     Against this backdrop, it is a breathtaking display of chutzpah and lawlessness for Stake to operate in Massachusetts, where gambling is strictly regulated to minimize the social costs of gambling.

14.     In Massachusetts, it is illegal to operate and offer online gambling casinos, including websites that offer slot machines, blackjack, and poker, and websites that use fake

"sweepstakes" as a pretext for gambling.  *See* 940 Massachusetts Code of Regulations, chapter 30 *et seq.*; Mass. Gen. Laws Ann. ch. 271, § 5B.

15.    Likewise, gambling contracts are void as a matter of public policy.  Parties cannot lawfully agree to engage in gambling any more than they can lawfully agree by contract to engage in child labor, the sale of controlled substances like cocaine, or participate in a murder-for-hire scheme.  In this regard, Massachusetts has a fundamental public policy against unlicensed and unregulated gambling.

**B.    Stake Operates A Gambling Website**

16.    Stake owns and operates a popular, casino-oriented internet gaming website called www.stake.us.

17.    Stake began as a project in 2013 to create on online cryptocurrency dice game called "Primedice."  Court documents in litigation between the founders reveal that when the project was being developed, the founders freely referred to the website as "gambling," and knew there were "potential criminal and tax issues" with the concept, but proceeded anyway.

18.    The project eventually "evolved" into Stake.com—aka "Stake.us." in the United States.

19.    While Stake's new website was in development, its CEO Edward Craven publicly touted Stake as "a massive project" that "**pretty much covers all aspects of gambling**."

20.    Today, Stake.us is a thriving illegal gambling operation that offers various online casino games, such as slot games, scratch cards, poker, and other table games such as blackjack and roulette.

21.    The website also offers a "live casino" where online players interact directly with live dealers visible via a webcam to play games like blackjack and roulette:





22.    Stake relies heavily on Instagram and other social media for advertising, often bolstered with celebrity endorsements from Canadian rapper, Drake.  The Instagram profile for the European version of Defendant's website, called Stake.com, describes it as the "World's Leading Betting Platform."



23.    On Stake's U.S. and European Instagram channels, Stake constantly refers to "gambling," such as the promotion with Drake shown below describing "The First Gambling Stream of 2025" and the other Instagram posts showing roulette and card tables.





 

24.    Gambling has been good to Stake and its founders.  Stake's gambling websites reportedly now handle over 4% of all Bitcoin transactions in the world, a figure that is staggering when considering the total size of the cryptocurrency economy.  Stake processes $219 billion in Bitcoin transactions annually, an amount that far exceeds the financial turnover of many legitimate financial institutions.

25.    Online gambling websites like Stake.us are fueling a steep rise in online gambling addiction, due in part by the easy access to gambling from any place with an Internet connection. Internet forums are awash with stories of people struggling with online gambling addiction generally, and Stake.us specifically.  The troubles they describe—massive losses, relationship troubles, suicidal thoughts—are age-old stories in the context of gambling:



r/problemgambling • 1 yr. ago
CucumberFluid9225

## Lost 43k in less than 2 weeks on Stake. Started gambling 12 days ago. 27/m

The title says it all. I'm 27 years old. Make 155k a year (starting this year). So I had 50k in the bank. I was loading Vanguard to put it all in my ETF portfolio while watching some youtube shorts.

I got hooked after I saw this stake streamer that was hitting insane bet after bet. I'm like oh okay wow it is not impossible like they say.

Instead of that, I put it my coinbase and depo'd 9k into stake.

Played Baccaratt since I actually have won virtual games often.

Even worse, I've studied gambling addiction for the last few years because of a youtube rabbit hole.

The house never loses. The only way to win at the casino is to own the casino. If I had no morals or ethics I probably would do it.

Told all my friends. Haven't told my mom or my girlfriend yet. They will lose their minds and I'm just not ready to rip those bandaids off.

Self excluded myself from everything with Gamban.

I'm feeling suicidal, but I know money is just money. I would never go through with it.

Day zero begins now.



r/problemgambling • 2 yr. ago
PatternBeneficial380

## Stake created and took advantage of my addiction.

I have before shown screenshots of multiple tries to self exclude on stake casino. They ignored my request more than 12 times, and I had a very motivating vip host assigned that encourage me to chase losses.

Now the gambling authority in Denmark has filed a police report and told me the police might contact me since they have reported my case.

This is clear evidence that stake is operating illegally and doing criminal stuff.

The screenshots basically shows the gambling authority contacting me and telling that stake have been blocked in Denmark for illegal gambling and that my case has been reported to the police.

I hope my expireince can help other problem gamblers to not play on crypto casinos since they are ruthless and will take advantage of you no matter what.

 **Mysterious_Cricket84** · 2y ago

You already lost when you signed up for stake. You knew this would end in disaster. Does being broke not help you to snap out of this? For me, the last time I quit was when I had no money left, and I loathe the feeling of being broke. That was enough to break the spell. Haven't gambled since, and that was over a year ago. Hopefully that was my last time ever.

⇧ 4 ⇩    ◯ Reply    ⇗ Share    ···

[deleted] · 2y ago

All other casinos and websites have excluded me at first demand. Stake won't. I agree, It's dangerous

 **r/problemgambling** · 2 yr. ago                                    ···
EntertainmentDry7640

## 21 & lost 300k today gambling on stake...

Just lost 300k today on stake.... made it from crypto + gambling and my gambling session lasted around 4 days. Im 21 and that was a journey. I feel so empty like nothing matters, im just wondering if it'll ever get better. I don't know how im going to put this past me and i feel as if no matter what i do now ill never be able to get a normal job and work a 9-5. I never wanted to slave away, and that 300k i made from trading crypto/nfts + gambling was meant to be my way out. I had around 13 btc and when btc does go to around 100k+ i wouldbe been on 1.3m. I believe that's probably worse case scenarios and some people say that in 2030 it could go to 500k + which means i wouldve been on around 6.5m within my 30's perhaps even more as i wouldve sold at around 90k, rebought around the next crash and so on.

Theres a lot of if statements, but if you understand the fundamentals of bitcoin you would know that its not unlikely and probably more likely than unlikely.

So im not sad over just my 300k loss but mostly the fact that i probably wouldve never had to work a day in my life again. I know probably around next year ill wake up to see bitcoin on 100k+ and I will be even more broken than I am now. Thats the worst part about it. Its like a slow torture of watching what couldve been.

I was gambling to cope from the stress of assignments, so i was on no sleep for 24+ hours and alot of adderall and i just lost control. It started from a 1k deposit and i thought this cant go that wrong.

26.     Stake's website includes a webpage warning users to monitor for signs of gambling addiction, and provides a link to gambling addiction organizations like Gaming Addicts Anonymous and the Financial Counseling Association of America.  And yet at the same time, Stake gaslights its users—including vulnerable populations like minors and people struggling with gambling disorder—by claiming that the operation is a "legal sweepstakes" and does not involve "real money gambling."  As addressed in the section next section, Stake's claims that it offers a "legal sweepstakes" is a sham.

### C.     Stake Has Massively Scaled Up An Old Gimmick That Criminals Once Tried To Use To Evade Gambling Laws

27.     Stake will ask the Court to disbelieve its own eyes and conclude that Stake.us is not really a gambling operation, but instead offers legal "sweepstakes."  That is an old gimmick that was once popular among criminals in the early 2000's.  As detailed below, courts and law enforcement agencies consistently determined that the same business model Stake utilizes today is a pretext for illegal gambling.  A federal district court has already held on summary judgment that one of Stake's competitors that operates materially the same way is an illegal gambling operation, and a jury later awarded close to $25 million in damages to a class of Washington state residents.  *See Larsen v. PTT, LLC*, 737 F. Supp. 3d 1076 (W.D. Wash. 2024).

#### 1.     The Internet Café "Sweepstakes" Crime Trend Of The Early 2000's

28.     The early 2000's saw a nationwide crime trend where criminals attempted to evade gambling laws by offering gambling at so-called "Internet cafés."  These operations—often located in suburban strip malls— "promoted" the sale of products such as Internet time or long-distance telephone minutes by offering "free" sweepstakes entries to customers.  When customers purchased the product, they received a corresponding number of "sweepstakes" points for each dollar spent.  Customers then used those sweepstakes points to play "casino-style" slot machine games for cash prizes at computer terminals provided at the Internet cafés.

29.     Most states' gambling laws require three elements: prize, chance, and consideration.  By artificially separating the consideration from the chance to win real money, criminals believed that they could evade state gambling laws, while claiming that the activities were no different from the sweepstakes promotions offered by Publisher's Clearing House and McDonalds.

30.     Courts and state law enforcement officials in the United States, including in Massachusetts, repeatedly determined that such tactics were an obvious pretext and cover for illegal gambling.  In fact, such Internet cafés are illegal in Massachusetts under 940 Mass. Code Regs. 30.04, which governs illegal "Lotteries, Sweepstakes and de Facto Gambling Establishments," and makes operation of Internet cafés a violation of  M.G.L. c. 93A, § 2(a). Likewise, Mass. Gen. Laws Ann. ch. 271, § 5B, makes it unlawful to "conduct" or "promote a sweepstakes that is conducted through the use of an entertaining display," which is precisely what Internet cafés and Defendants' websites do.

31.     It appears that every court in the United States to address the issue determined that Internet café's were illegal gambling operations.  *See Lucky Tunes #3 LLC v. Smith* 2019 WL 13436322 (E.D. Tex. Nov. 18, 2019); *Texas v. Ysleta Del Sur Pueblo* 2015 WL 1003879 (W.D. Tex. Mar. 6, 2015); *State v. Fellows* 471 S.W.3d 555 (Tex. 2015); *U.S. v. Davis* 690 F.3d 330 (5th Cir. 2012); *Moore v. Mississippi Gaming Com'n* 64 So.3d 537 (Miss. 2011); *Barber v. Jefferson County Racing Ass'n., Inc.* 960 So.2d 599 (Ala. 2006); *Jester v. State* 64 S.W.3d 553 (Tex. 2001); *Midwestern Enterprises, Inc. v. Stenehjem* 625 N.W.2d 234 (N. Dakota 2001); *Mississippi Gaming Com'n. v. Six Electronic Video Gambling Devices* 792 So.2d 321 (Miss. 2001).

32.     For example, in 2011, three individuals—including a Fall River, Massachusetts City Counsil member—were indicted and charged with various gaming charges in connection with the operation of two Internet cafés.  The defendants unsuccessfully argued that players were only paying for Internet time and that any gambling that occurred involved legitimate sweepstakes offers.  The Massachusetts Attorney General stated unequivocally that this conduct constituted illegal gambling.

33.     More recently, an individual in Mississippi was convicted of racketeering and gambling charges in connection with an Internet café where—like here—customers could play simulated games that resembled gambling programs, such as slot machines, keno, and poker. Customers needed a "sweepstakes" code to play the game, but customers could not purchase a sweepstakes code outright.  Instead, customers received sweepstakes codes by purchasing something else in the store, such as food or phone minutes.

34.     In 2015, the California Supreme Court addressed Internet café gambling in *People ex rel. Green v. Grewal*, 61 Cal. 4th 544 (2015), where the defendant sold Internet time on computer terminals.  The defendant promoted the sale of Internet time and other products with a "sweepstakes" giveaway, wherein the defendant provided 100 "sweepstakes points" for each dollar spent, which could then be used to play games of chance.  The defendants denied that the operation involved gambling because they were supposedly only selling computer time, and that the sweepstakes games were "not gambling" but instead a "promotional game."  The Kern County District Attorney obtained a civil injunction for violations of California's gambling laws, and that injunction was affirmed on appeal.

35.     In *Lucky Bob's Internet Café, LLC v. California Dept. of Justice*, 2013 WL 1849270 (S.D. Cal. 2013), the Bureau of Gambling Control, a bureau within the Department of

Justice's Division of Law Enforcement, seized property owned by an Internet café where customers were given 100 entries to a Sweepstakes for every $1 of purchased Internet time, which could then be used to play one of seventeen casino-style games. The Internet café owner sued for declaratory relief, seeking a declaration that the operation did not violate California's gambling laws because, among other reasons, it was missing the element of consideration. The district court rejected that argument, granting summary judgment in favor of the California Department of Justice.

36.     In *Telesweeps of Butler Valley, Inc. v. Kelly*, 2012 WL 4839010 (M.D. Pa. Oct. 10, 2012), a Pennsylvania federal court held that the purchase of a long-distance telephone card that came with a commensurate number of free entries to participate in a 'casino-style' sweepstakes game constituted "indirect consideration" to participate in the sweepstakes, even though no purchase was necessary and (like here) alternative methods of free entry were available. In rejecting the defendant's argument that the customer was simply paying for telephone time and not the sweepstakes entries, the court declared that "plaintiff's attempt to separate the consideration from the chance to win by inserting a step between the two elements is clever, but it merely elevates form over substance. At bottom, what Telesweeps is doing constitutes gambling."

37.     As the South Carolina Attorney General put it, "a gambling scheme cannot be transformed into legitimacy merely by splitting it into to parts. … To try and conceal gambling behind the façade of the purchase of Internet time is … nothing more than legal trickery."

38.     The Ohio Court of Appeals said it best when rejecting a similar sweepstakes scheme in *City of Cleveland v. Thorne*, 987 N.E.2d 731 (2013): "**the justice system is not some lumbering oaf who must ignore the patently obvious gambling scheme apparent here simply**

**because of a contrived separation between consideration and the scheme of chance**."  The court added, "there is no justification for ignoring the nature of the transaction simply because the system is designed in such a way as to artificially isolate one part of the illegal transaction from another.  The justice system is not so blinded by chicanery."

### 2.    Stake.us Is An Online Version Of An Internet Café

39.    Like the Internet cafés in operation a decade ago, Stake attempts to separate the element of consideration from chance by offering a two-tiered system of virtual coins, both of which function like casino chips, while calling the whole affair a "sweepstakes."

40.    The first type of virtual currency, called "Gold Coins," can be used to play the casino games in "Standard Play" mode with no potential to win money.  When using Gold Coins, a player can only win or lose Gold Coins.  However, for the most part, people only go to Stake.us to engage in real-money gambling, so those Gold Coins are largely ignored.

41.    The second type of virtual currency—called "Stake Cash"—can be used to play the same casino-style games in a "Promotional Play" mode, where they carry real monetary value and can be redeemed for cryptocurrency.  To get Stake Cash, players typically must purchase them in a package with Gold Coins.  Stake pretends that the "Stake Cash" is a "free" bonus added to the sale of Gold Coins, but as shown above, that is the same tactic Internet café owners unsuccessfully argued before when trying to artificially separate the element of consideration from the other elements of gambling.

42.    There are two other problems with the notion that Stake Cash is just a "free" add-on bonus to the Gold Coins.

43.    First, as noted above, most people ignore the Gold Coins after buying them.

44.     Second, and more importantly, Stake Cash is a proxy for real money.  Depending on the package bought, there is nearly 1:1 correlation between the number of dollars spent and the amount of Stake Cash provided in each purchase.  If someone spends $20 dollars ostensibly to by Gold Coins, they get 20.05 Stake Cash Coins to use for gambling; whereas if they spend $50, they will get 50.12 Stake Cash Coins, and so on:



45.     Likewise, Stake Cash is redeemable on a 1:1 basis.

46.     The $9,000 per day "maximum buy" underscores the large amounts of money being gambled on Stake.us.  Nobody spends $9,000 a day just to play video games.

47.     In short, Stake is copying the Internet café playbook, but instead of selling Internet time, long-distance phone minutes, or small groceries coupled with supposedly "free" sweepstakes

15

tokens, Stake sells Gold Coins, which are then ignored so that players can use the Stake Cash for cryptocurrency gambling.

48.    The owners of a competitor gambling website that operates the same way as Stake.us in all material respects, called ChumbaCasino.com, publicly admitted in a securities filing that social casino gaming websites like Stake.us are modelled after illegal Internet cafés:

> 67 Over the last 10 years, 'Internet Sweepstakes Cafes' have evolved and proliferated across the US. They operate as internet cafes that offer their customers entrance into a sweepstakes draw upon the purchase of a product, often internet time or telephone call minutes. The participant can find out whether they have won the pre-determined draw by a simple reveal but many choose to do so through a programme that simulates a slot machine or poker game. This may even include an online element, but neither the presentation nor their interaction affects the outcome of the draw.
>
> 68 Increasingly sweepstakes gaming has emerged out of these cafes, with consumer products allowing 'free' entrance into games in which cash prizes can be won in return.

49.    The prospectus also explains how, at the time, "Internet Sweepstakes Cafes are reported to have turned over $10bn (€9.4bn) in 2015, with over 5,000 now operating in 12 states" (*id.* at 69), and described the "significant opportunity" of adopting the "sweepstakes café model." *Id.* at 95-96.

50.    In sum, the parallels between Stake.us and the Internet sweepstakes café scheme are clear:

✓ Both sell a "product" that comes with a commensurate number of "free" sweepstakes entries to play real money 'casino-style' games of chance in a 'casino-like' setting. Instead of the cafés selling a "prepaid phone card," Stake sells a virtual gold coin and gives a commensurate amount of "free" Stake Cash.

✓ Both run sweepstakes games perpetually and not on a limited and occasional basis, as is typical with legitimate promotional sweepstakes like the McDonald's Monopoly sweepstakes.

✓ Both offer casino-like payouts, typically 90% or more of revenues, whereas legitimate promotional sweepstakes normally have very low prize to entrant ratios.

✓ Both offer several ways to get free entries without requiring a product purchase, such as by mailing a postcard to a designated P.O. Box address, although the number of free entries awarded through this method is a very low amount, if anything at all.

✓ In addition, the "casino-like atmosphere" of Stake.us further supports the conclusion that the true purpose of the website is "to legitimize illegal gambling." *U.S. v. Davis*, 690 F.3d 330, 339 (5th Cir. 2012).

**D.    Stake's Admission That Its Website Offers "Sweepstakes" Further Establishes Illegality**

51.    The Terms & Conditions refer to Stake.us offering "sweepstakes" approximately 15 times.

52.    Stake's admission that the websites offer "sweepstakes" further establishes that the websites are unlawful.

53.    The Massachusetts legislature passed laws specifically outlawing the use of fake "sweepstakes" to evade state gambling laws.

54.    940 Massachusetts Code of Regulations, chapter 30 *et seq.*, governs "Unlawful, Lotteries, Sweepstakes and de Facto Gambling Establishments."  Chapter 30.04 provides as follows:

(1) It is an unfair and deceptive act or practice in violation of M.G.L. c. 93A, § 2(a) for a person to solicit or accept payment for a chance to win a prize.
(2) With respect to a business or a transaction that involves or purports to involve both a chance to win a prize and the sale or purported sale of a good or service, it is an unfair and deceptive act or practice in violation of M.G.L. c. 93A, § 2(a) for any person to engage in a business or engage in a transaction where a gambling purpose predominates over the *bona fide* sale of *bona fide* goods or services.

55.     This provision applies to any business or entity, "physical or otherwise," and thus includes online businesses.  *See id.* at Ch. 30.03 (defining "Establishment").

56.     The term "sweepstakes" includes any game or promotion where a person may become eligible to receive a prize, "with or *without* consideration."  *Id.* (defining "Sweepstakes") (emphasis added).  So, any argument by Stake that no purchase is necessary to participate in the sweepstakes is irrelevant.

57.     As explained by the Massachusetts Supreme Court, the Massachusetts Attorney General has engaged in a well-publicized effort to "curb the proliferation—and secure the regulation—of online gambling …."  *New England Internet Café, LLC v. Clerk of Superior Court for Criminal Business in Suffolk Cnty.*, 462 Mass. 76, 79 (2012).  In response to arguments that "such gaming involves legitimate sweepstakes offers, the Attorney General has stated her unequivocal position that it constitutes illegal gambling."  *Id.*

58.     Stake "solicit[s] or accept[s] payment for a chance to win a prize" when it sells Gold Coins, because such purchases always include Sweeps Coins, which Stake states can be redeemed for "prizes."

59.     Given that Stake repeatedly describes its websites as offering "casino-style" gaming, and does not offer much if anything else, the "gambling purpose" of the website necessarily "predominates" over any purported non-gambling offerings.

60.     Stake's purported sweepstakes is further illegal under Mass. Gen. Laws Ann. ch. 271, § 5B, which provides in relevant part as follows:

> It shall be unlawful for any person to knowingly possess with the intent to operate, or place into operation, an electronic machine or device to: (1) conduct a sweepstakes through the use of an entertaining display, including the entry process or the reveal of a prize; or (2) promote a sweepstakes that is conducted through the use of an entertaining display, including the entry process or the reveal of a prize.

61.    "Any person who violates this section shall be punished by a fine of not more than $250,000 per electronic machine or device placed into operation or by imprisonment in state prison for not more than 15 years, or by both such fine and imprisonment." *Id.* at § 5B(d).

62.    This statute is consistent with 940 Mass. Code Regs. 30.04, inasmuch as the term "sweepstakes" includes any game in "which, *with or without* payment of any consideration, a person may enter to win or become eligible to receive any prize, the determination of which is based on chance." Mass. Gen. Laws Ann. ch. 271, § 5B(a).

63.    The statute also applies to online gaming that simulates casino gambling, because the term "entertaining display" means any "visual information" that "takes the form of actual game play or simulated game play," and the definition of "electronic machine or device" includes screen and "server based" technology that "utilize[s] software" and "computer game[s]." *Id.*

### E.    Stake Misleads The Public With False Claims Of Legality And Deceptive Omissions And Partial Representations

64.    Stake also engages in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce by misleading and causing confusion that participation in Stake.us is legal in Massachusetts.

65.    In its terms and conditions, Stake states "[i]f you live in any of the excluded territories identified below, do not proceed any further as you are not eligible to access or use the platform, create a customer account, play the games or interact with Stake in any other way."

66.    Stake further lists the following "Excluded Territories" in the terms in condition:

any country other than the continental United States of America and Hawaii ("US"); Washington, New York, Nevada, Idaho, Kentucky, Michigan, Vermont, New Jersey, Delaware, West Virgina, Pennsylvania, Rhode Island, Connecticut, and any other states or jurisdictions which, under the laws applicable to you, are legally precluded from playing the games offered on the Platform, and any other jurisdiction Stake excludes, in its sole discretion, from time to time."

67.     Stake does not include Massachusetts as an excluded territory, implying that it is legal to use Stake.us in this state.

68.     Further, Stake states that, if the user is in an excluded territory, the user would not be able to access or even use the platform, create an account, play the games, or interact with the Stake in any other way. But Stake.us is accessible in Massachusetts, which causes the users to believe that Massachusetts permits such online gaming.

69.     Nor does Stake disclose that its entire business model is based on Internet cafés, a clearly and indisputably illegal practice.

70.     The Terms & Conditions similarly state, "the platform and games do not offer real money gambling," falsely suggesting that what transpires on Stake.us somehow falls outside the legal definition of "gambling," when that is not the case.

## PARTIES

71.     Plaintiff M.M. is domiciled in Massachusetts and has frequently gambled on the subject websites while in Massachusetts.  Plaintiff struggles with gambling addiction and due to the stigma associated with addiction and a desire to not disclose personal mental health information, he is filing this matter anonymously but will disclose his name as necessary to the Court under seal.  Plaintiff lost money on Stake's illegal gambling websites within the last four years.  As a result, he suffered an injury in fact resulting in the loss of money and/or property.

72.     Plaintiff Wascar Deleon is domiciled in Massachusetts and has frequently gambled on the subject websites while in Massachusetts.  Plaintiff lost money on Stake's illegal gambling websites within the last four years.  As a result, he suffered an injury in fact resulting in the loss of money and/or property.

73.     Both Plaintiffs used the website under the mistaken belief—caused by Stake's misrepresentations and omissions—that the website was a legal form of "sweepstakes" and not unlawful gambling.

74.     Plaintiffs have no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

75.     Defendant Sweepsteaks Limited is a for-profit business entity registered in Cyprus and with its registered office at 28 Oktovriou, 313 Omrania BLD, Limassol, Cyprus. Defendant also operates a U.S office at 13101 Preston RD STE 110-5027 Dallas, TX 75240. Through its website, Defendant conducts business in California.

## JURISDICTION AND VENUE

76.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from defendant.

77.     The Court has personal jurisdiction over Stake because it regularly and intentionally engages in gambling in Massachusetts.

78.     Stake.us is an interactive websites used for commercial purposes—specifically, gambling.

79.     The website is accessible and made available in Massachusetts.

80.     The website appeals to, and profits from, an audience in Massachusetts, and Massachusetts residents form a significant portion of the websites' customer base.

81.     It was foreseeable that Massachusetts residents would use the websites because Stake knows that Massachusetts residents frequently gamble on the website and that they will continue to do so.  Stake knows that people in Massachusetts use the website because there is widely available technology that allows websites to detect the location of a website visitor based on the website visitor's IP information, including the state in which they are located.  Stake utilizes this technology on the subject websites and blocks users from certain states.  However, Stake made an affirmative decision not to use that technology to block Massachusetts website visitors because that would prevent Stake from profiting from gambling in Massachusetts, a significant market in the United States.

82.     The Terms and Conditions of the subject websites purport to prohibit the use of the websites from certain states.  Massachusetts is not one of those prohibited states.

## CLASS ALLEGATIONS

90.     Plaintiffs seek to represent classes defined as:

All persons in Massachusetts who gambled on Stake.us;

91.     Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be modified by amendment or in the motion for class certification, including through the use of subclasses.

92.     Class members are so numerous that their individual joinder herein is impracticable.  On information and belief, the number of class members is in the tens of thousands, if not more.  The precise number of class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.

93.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions

include, but are not limited to:

<div style="margin-left: 2em">

(a)    whether Stake.us offers unlawful gambling;

(b)    whether Stake.us offers unlawful sweepstakes;

(c)    whether Stake has been unjustly enriched by the operation of its website;

(d)    whether Plaintiffs and Class members were injured by Stake's conduct;

(e)    whether Plaintiffs and Class members are entitled to recover triple their gambling losses;

(f)    whether Plaintiffs and the other members of the Class are entitled to an injunction shutting down operation of the website.

</div>

94.    The claims of the named Plaintiffs are typical of the claims of the class members because they all arise from the unlawful gambling made available on Stake.us.

95.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of class members they seek to represent.  Plaintiffs have retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.

96.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of class members.  Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Stake's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Stake's liability.  Class

treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**FIRST CAUSE OF ACTION**
**Massachusetts General Laws Chapter 93A, § 2**

97.    Plaintiffs repeat and re-allege all previous paragraphs, as if fully included herein.

98.    Plaintiffs bring this claim on behalf of themselves and all class members

99.    Massachusetts law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws Ch. 93a, § 2.

100.    Plaintiffs, class members, and Stake are "persons" within the meaning of Mass. Gen. Laws Ch. 93a, § 1(a).

101.    Stake is engaged in "trade" or "commerce," within the meaning of Mass. Gen. Laws Ch. 93A, § 2.

102.    Stake is not incorporated or headquartered in Massachusetts.  Stake has no property in Massachusetts.

103.    Stake engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mass. Gen. Laws Ch. 93A, § 2:

   a.    By operating its gambling website, Stake violates 940 Massachusetts Code of Regulations, chapter 30.04's prohibition against "Unlawful, Lotteries, Sweepstakes and de Facto Gambling Establishments."

   b.    By operating its website, Stake violates Mass. Gen. Laws Ann. ch. 271, § 5B.

   c.    By operating unlawful, online gambling establishments without the requisite licensing and approval from the Massachusetts Gaming Commission,

     d.   By advertising the website in a manner that has the tendency or capacity to deceive or confuse users into believing that the activities on the websites are lawful, when in fact they are not.

104.    Massachusetts aggressively regulates all forms of gambling.  One reason it does so is to prevent consumers from being cheated by professional gambling operations, to minimize the social harm of gambling, and to generate state revenue.

105.    Because Stake's website operates as if they are not subject to gambling regulations, the website does not comply with all the regulations that govern gambling operations.

106.    The utility of the Stake's conduct is outweighed by the gravity of harm to the public, because the social costs of gambling are well known and adversely affect the public interest.  Stake's operation of their websites offends an established public policy that gambling is generally illegal, with narrow and specific exceptions for certain regulated gambling operations. Stake's operation also unfairly makes money from consumers by evading the strict regulation and control of Massachusetts' gambling statutes.

107.    Operating an unlicensed and unregulated gambling operation—or attempting to exploit perceived loopholes in gambling laws—is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

108.    The social cost of gambling is substantial, and the injury caused to consumers is not outweighed by any countervailing benefits to consumers or competition.  The conduct at issue here provides no benefits to consumers or competition.  Stake avoids Massachusetts' extensive gambling regulations that reputable and licensed gambling operations must comply with, and withhold state revenues from gambling that Defendants' regulated competitors must

pay.  The injury is not one that consumers can reasonably avoid, especially if a person, a person's spouse, or a person's dependent struggles with gambling addiction.

109.    Stake's conduct at issue here is also tethered to underlying statutes and regulations prohibiting unlicensed and unregulated gambling, and violates the policy or spirit of antitrust law.

110.    Stake's conduct also is unfair to the extent that Stake exploits perceived loopholes in gambling laws that Stake believes allow it to portray its gambling operation as a "sweepstakes" while in fact offering conventional—and highly regulated—gambling games like slots and poker.

111.    Stake's conduct also constitutes an unfair business practice because Stake targets and exploits vulnerable and addicted players, including minors, while falsely denying that its website involves gambling.

112.    Plaintiffs and class members have suffered injury in fact, including economic injury, and actual damages resulting from Defendants' operation of illegal gambling websites.

113.    Plaintiffs seek all available relief under this cause of action, including injunctive relief to shut down operation of the website and statutory damages.

## SECOND CAUSE OF ACTION
### Massachusetts General Laws Chapter 137, § 1

114.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

115.    Plaintiffs bring this claim on behalf of himself and all class members.

116.    The games of chance offered on Stake's websites are "cards, dice or other game[s]" within the meaning of the statute.

117.    Stake's website is not "licensed gaming establishments pursuant to chapter 23k or sports wagering conducted pursuant to chapter 23N" and therefore do not fall within the statutory exclusions under chapter 137.

118.    Plaintiffs and class members have lost money to Stake while playing games of chance on the website

119.    Plaintiffs and class members have paid or delivered money or other things of value to Defendants for or in consideration of a chance of obtaining money, prizes, or things of value.

120.    Plaintiffs seek on behalf of themselves and all other class members, all relief available under this statute, including treble damages.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**

121.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

122.    Plaintiffs bring this claim on behalf of themselves and all class members.

123.    To the extent required by law, this cause of action is alleged in the alternative to legal claims.

124.    Plaintiffs and class members conferred a benefit on Stake in the form of the gross revenues Stake derived from its role in the operation of the websites.

125.    Stake has been unjustly enriched in retaining the unlawful gambling revenues derived from Plaintiffs' and the class members.  Retention of such revenues under these circumstances is unjust and inequitable because (1) Stake falsely implies to website users that its websites do not involve illegal gambling; (2) Stake profits from and exploits individuals who

struggle with gambling addiction; and (3) Stake's business model depends on exploiting perceived loopholes in state gambling law.

126.    Stake benefits financially from the unlawful websites and retain financial benefits from consumers who loose money on those websites.

127.    There is a direct relationship between the detriment experienced by Plaintiffs and class members and the benefits that Stake obtains as a result of its operation of the website.  The detriment to class members and Stake's benefits all flow from the challenged conduct at issue here: namely, the operation of unlawful gambling website.

128.    Stake's conduct in operating and marketing the website was a proximate cause of Plaintiffs' and class members' injuries.

129.    Plaintiffs and class members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Stake obtained as a result of its unjust conduct.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs, individually and on behalf of the putative class members, pray:

A.    For injunctive relief shutting down the operation of Stake's unlawful gambling websites, Stake.us.

B.    Recovery of actual and statutory damages, including treble damages.

C.    Recovery of non-restitutionary disgorgement of profits.

D.    An award of fees and costs, to the extent permissible by law.

E.    For such other and further relief as the Court may deem proper.

Dated:  May 23, 2025                **SMITH KRIVOSHEY, PC**

                                By: _____

28

Joel Smith

**SMITH KRIVOSHEY, PC**
Joel D. Smith (BBO 712418)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com


**SMITH KRIVOSHEY, PC**
Yeremey O. Krivoshey (pro hac vice forthcoming)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

*Attorneys for Plaintiffs*